UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM MILLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| HAUSMANN-MCNALLY, S.C., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | No. 1:13-cv-00044-SEB-DKL |
| ) | |
| HAUSMANN-MCNALLY, S.C., ) | |
| ) | |
| Third Party Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| PRICE WAICUKAUSKI & RILEY, LLC, ) | |
| ) | |
| Third Party Defendant. ) | |

**ORDER ON THIRD PARTY DEFENDANT'S MOTION TO DISMISS**

This cause is before the Court on Third Party Defendant Price Waicukauski & Riley, LLC's Motion to Dismiss Hausmann-McNally, S.C.'s Third Party Complaint [Docket No. 15], filed on March 13, 2013. For the reasons set forth below, the motion is GRANTED.

**Factual and Procedural Background**

The third party complaint that is the subject of the present motion to dismiss arises out of a legal malpractice action, which in turn arises out of a personal injury claim. Plaintiff William Mills, the personal injury claimant, sued his former counsel, Defendant/Third Party Plaintiff

1

Hausmann-McNally S.C. ("Hausmann-McNally") for legal malpractice. Hausmann-McNally, in turn, filed a third party complaint against Plaintiff's present counsel, Price, Waicukauski & Riley, LLC ("PWR") seeking indemnification or, in the alternative, contribution.

**1. The Personal Injury Suit**

Larry Mills was injured in a traffic accident on October 10, 2008 when his motorcycle was struck by another vehicle at an intersection on State Road 37 in rural Lawrence County, Indiana. Compl. ¶¶ 5–6.[1] The driver of the other vehicle was Hannah Nelson, an employee of the Hoosier Uplands Development Corporation, who at the time of the accident was driving on an errand related to her employment with that agency.[2] *Id.* at ¶¶ 7–8. After the accident, Ms. Nelson was interviewed by police for a crash report; she stated that she was the owner of the vehicle, and she provided her personal insurance information. Docket No. 30 at 4. Shortly thereafter, Mr. Mills retained the law firm of Hausmann-McNally to represent him in claims against "all liable parties" to seek recovery for his injuries; Indiana attorney Rodney A. Tucker held primary responsibility for the representation of Plaintiff's interests within Hausmann-McNally. *Id.* at ¶ 12; *see also* Docket No. 38 at 6.[3] Larry Mills died in February 2012, and Plaintiff William Mills now serves as the representative of the decedent's estate. *Id.* at ¶ 2.

Shortly after agreeing to represent Plaintiff, Hausmann-McNally contacted Farm Bureau, Ms. Nelson's personal automobile insurer. On November 6, 2008, Farm Bureau sent Hausmann-McNally copies of Ms. Nelson's insurance policy and declarations page. In the declarations page, Ms. Nelson stated that her vehicle "is driven to and from work 150 miles or less each week." Docket No. 38 at 7. In preliminary negotiations with Hannah Nelson pursuant to the

---

[1] Citations to the Complaint ("Compl.") refer to Plaintiff's underlying complaint for malpractice [Docket No. 1].
[2] At the time of the accident, Ms. Nelson went by the name Hannah Brooking.
[3] Citations to Docket Nos. 30 and 38 refer to the briefs filed by the parties related to Defendant Hausmann-McNally's Motion to Disqualify Counsel, which we address in a separate order. The parties' briefing on the disqualification motion is in some respects more detailed than their submissions on this motion.

personal injury claim, Hausmann-McNally discovered that the limit of her personal automobile insurance policy was $50,000—significantly less than the amount of damages Plaintiff planned to seek. *Id.* Hausmann-McNally did not make any further inquiries about Ms. Nelson's employment status or the possibility of recovering from her employer. Instead, Hausmann-McNally made demand on Farm Bureau for the full $50,000, and Farm Bureau agreed to settle on May 13, 2009 for that amount. Farm Bureau provided Hausmann-McNally with a release, and ordered a $50,000 draft, to be paid to Plaintiff and counsel.[4] *Id.* at 8 (citing Docket No. 38, Ex. A).

Because his damages exceeded the settlement amount, Mr. Mills expressed interest in the possibility of recovering from other entities, such as the manufacturer of his motorcycle helmet and the state agencies responsible for designing the intersection where the accident occurred. To facilitate this expansion of the scope of the case, Mr. Mills retained PWR on October 19, 2009. Compl. ¶¶ 17–18. The parties differ in their recounting of the scope of PWR's representation. According to Hausmann-McNally, PWR took on the role of lead counsel for all of Mr. Mills's potential claims. Docket No. 30 at 4 ("PWR served as lead counsel in the litigation"). PWR, in contrast, asserts that it was retained only to pursue the new causes of action, and that it had no role in the original claim against Ms. Nelson. Docket No. 38 at 9–11.

The parties also differ in how they explain what happened next. It is undisputed that Hausmann-McNally, at least nominally, remained on as co-counsel after Plaintiff hired PWR. Plaintiff filed a products liability and negligence claim on April 21, 2010 in the Marion County Superior Court in Indianapolis, and that suit remains pending. Compl. ¶ 19. Both Hausmann-McNally and PWR filed appearances on Plaintiff's behalf in that suit. Docket No. 30 at 4–5.

---

[4] A dispute arose later over whether Hausmann-McNally had ever received this draft, and thus whether the settlement was finalized.

Plaintiff also filed a personal injury claim against Ms. Nelson at the same time. Compl. ¶ 19. What is disputed is *why* Plaintiff filed this personal injury suit. In PWR's telling, PWR discovered—in the course of preparing for its products liability suit—that the March 2009 $50,000 settlement check from Ms. Nelson's insurer was not actually in Hausmann-McNally's possession; it also learned around the same time that photographs of the scene crucial to the products liability claim were in Farm Bureau's possession. Docket No. 38 at 12–13. PWR explains that it named Ms. Nelson as a Defendant in order to enforce the earlier settlement agreement and to obtain an agreement from Farm Bureau to produce those photographs—in other words, the inclusion of Ms. Nelson was largely incidental to their pursuit of the products liability claim. *Id.*

Hausmann-McNally remembers events differently. According to its account, "there was significant confusion about the status of the Hannah Nelson claim well after PWR entered the case, and ample evidence to support the inference that the claim had not yet been settled . . . ." Docket No. 47 at 5. In sum, Hausmann-McNally asserts that PWR, as the new lead counsel for Plaintiff, filed suit against Ms. Nelson not as an afterthought, but so that it could, for the first time, secure payment up to the policy limit from Ms. Nelson's insurer. *Id.* at 4–6.

In either event, Ms. Nelson's counsel quickly reached a settlement agreement with Plaintiff, but the products liability suit proceeded. In the course of discovery on that surviving products liability claim, PWR deposed Hannah Nelson as a witness on September 18, 2012. Compl. ¶ 20. During this deposition, Ms. Nelson revealed that she was acting within the course and scope of her employment with the Hoosier Uplands Development Corporation at the time of the accident. *Id.* Hoosier Uplands is a "Community Action Agency," and is therefore considered a "political subdivision" of the State of Indiana for the purposes of the Indiana Tort Claims Act.

4

*Id.* at ¶ 10 (citing Ind. Code §§ 12-14-23-2; 34-13-3-22(a)(1)). Under Indiana law, a prospective plaintiff intending to sue a political subdivision of the state for damages must provide written notice to the defendant agency outlining the nature of the claim and damages within 180 days of the injury. *See* Ind. Code § 34-13-3-8(a). If a prospective plaintiff fails to provide this notice, he is permanently barred from bringing the claim. *Id.* As of September 18, 2012, when Ms. Nelson was deposed and PWR discovered that the procedural bar applied, the 180-day notice period for any claim by Plaintiff against the state agency had long since run. For the accident occurring in October 2008, notice would have been required by April 2009—some six months before PWR was retained in October 2009. *See* Compl. ¶ 18.

**2. The Malpractice Suit**

After deposing Ms. Nelson, an attorney with PWR contacted Mr. Tucker—Plaintiff's primary counsel with Hausmann-McNally—and informed him that since the car accident had been caused by a state agency employee acting within the scope of employment, the 180-day notice period applied. *Id.* at ¶ 21. According to PWR, Mr. Tucker responded: "Your case just got easier. You have a client to call, and you need to sue us for malpractice." *Id.* at ¶ 22. Shortly after this deposition, Hausmann-McNally withdrew as Plaintiff's co-counsel; on October 16, 2012, the Marion County Superior Court granted Hausmann-McNally's motion to withdraw in the pending personal injury suit before that court. *Id.* at ¶ 23.

Plaintiff subsequently made demand on Hausmann-McNally for its alleged malpractice in allowing the 180-day notice deadline to lapse, and thus denying Plaintiff any prospect of recovery from the Hoosier Uplands Development Corporation for the injury caused by the agency's employee. *Id.* at ¶¶ 24–28. When Hausmann-McNally disclaimed any liability, Plaintiff, represented by PWR, sued Hausmann-McNally for malpractice, filing its complaint

5

with this Court on January 9, 2013. *See* Docket No. 1. In its answer, filed on March 4, 2013, Hausmann-McNally continued to deny that it had committed malpractice. In the alternative, it also filed a third party complaint against PWR, seeking recovery on indemnity and contribution theories in the event that Hausmann-McNally is found liable to Plaintiff. Docket No. 9. PWR filed this motion to dismiss the third party complaint on March 13, 2013. Docket No. 15.

## Legal Analysis

### Standard of Review

PWR moves to dismiss Hausmann-McNally's third party complaint on two grounds: for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

**1. Rule 12(b)(1)**

The Federal Rules of Civil Procedure command that courts dismiss any suit over which they lack subject matter jurisdiction—whether acting on the motion of a party or *sua sponte*. *See* Fed. R. Civ. Pro. 12(b)(1). In ruling on a motion to dismiss under Rule 12(b)(1), we "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *Franzoni v. Hartmax Corp.*, 300 F.3d 767, 771 (7th Cir. 2002); *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001). We may, however, "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *See Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993); *Estate of Eiteljorg ex rel. Eiteljorg v. Eiteljorg,* 813 F. Supp. 2d 1069, 1074 (S.D. Ind. 2011).

When a party raises subject matter jurisdiction as one of several grounds for dismissal, a court should consider the Rule 12(b)(1) motion first, since the lack of jurisdiction is an absolute

bar rendering all other challenges moot. *See Reason v. Heslin,* 723 F. Supp. 1309, 1311 (S.D. Ind. 1989).

**2. Rule 12(b)(6)**

PWR also seeks dismissal on the grounds that Hausmann-McNally's third party complaint is deficient as a matter of law. Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In determining the sufficiency of a claim, the court considers all allegations in the complaint to be true and draws such reasonable inferences as required in the plaintiff's favor. *Jacobs v. City of Chi.,* 215 F.3d 758, 765 (7th Cir. 2000). In order to survive a challenge under this rule, a complaint must have "facial plausibility"—that is, the plaintiff must provide factual material sufficient to support an inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* If a claim has been satisfactorily stated, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Thus, at this stage of the litigation, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

## Discussion

PWR advances two principal arguments against Hausmann-McNally's third party complaint, one procedural and one substantive. First, PWR argues that because any indemnity or contribution claim is contingent upon a finding that Hausmann-McNally is liable for malpractice, any such claim is unripe and this Court lacks subject matter jurisdiction. *See* PWR Br. 5–6.

Second, PWR asserts that both of Hausmann-McNally's alternative theories of recovery fail as a matter of law. Specifically, PWR contends that Indiana law bars purely derivative claims for indemnity outside the context of certain relationships, and that Indiana law prohibits claims for contribution between joint tortfeasors. *See* PWR Br. 6–7. Because lack of subject matter jurisdiction would bar any further consideration of the third party claim, we first consider PWR's ripeness claim before turning to its substantive arguments for dismissal.

I.     **Ripeness**

The doctrine of ripeness is a prudential limitation on federal courts' jurisdiction, embodying the principle that it is wasteful of judicial resources—and potentially unjust—to decide a case until the issues it presents have been sufficiently developed. *See Peick v. Pension Benefit Guar. Corp.*, 724 F.2d 1247, 1261 (7th Cir. 1983). In the words of the United States Supreme Court, the doctrine prevents "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 808 (2003). In assessing whether a case is ripe for judicial review, courts generally consider two factors: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Estate of Eiteljorg*, 813 F. Supp. 2d at 1075 (citing *Abbott Labs. v. Gardner,* 387 U.S. 136, 149 (1967)). Because a claim "is not ripe if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," *see Arnett v. Myers,* 281 F.3d 552, 562 (6th Cir. 2002), PWR argues that the third party claim here is necessarily unripe because it depends upon a finding of liability in the underlying malpractice action. PWR Br. 5.

PWR is correct to assert that claims wholly contingent upon future events are ordinarily not ripe for judicial resolution. Freestanding claims for indemnification or contribution—which

by their nature depend on a court's antecedent conclusion that some party is liable—are thus not ripe until an underlying award for damages has been made. *See, e.g., Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). This, however, is not a freestanding claim; rather it is a third party complaint pursuant to Federal Rules of Civil Procedure 14. Rule 14 aims to promote judicial efficiency by enabling the consolidation of related claims into a single action, and to this end it allows for the assertion of third party claims or counterclaims that might be too contingent to stand on their own. *See generally Colton v. Swain,* 527 F.2d 296, 299 (7th Cir. 1975). "The very nature of third-party practice subjects it to contingencies . . . . Refusing to allow a third-party plaintiff to join a third-party defendant who may be liable to him would wholly obviate the purposes of third party practice, resulting in a multiple successor indemnity actions that fly in the face of judicial efficiency and the goals of Rule 14." *State College Area Sch. Dist. v. Royal Bank of Can.,* 825 F. Supp. 2d 573, 583 (M.D. Pa. 2011); *see also Atl. Aviation Corp. v. Costas' Estate,* 332 F. Supp. 1002, 1007 (E.D.N.Y. 1971) ("[F]or procedural purposes a claim for indemnification is ripe for adjudication; it may be tendered in a pending action in which the primary liability is being adjudicated."); *Hecht v. Summerlin Life and Health Ins. Co.*, 536 F. Supp. 2d 1236, 1241 (D. Nev. 2008) (holding that indemnification and contribution third party claims are ripe despite their contingent status).

      In its reply brief on this motion, PWR wisely passes quickly over its ripeness argument, focusing instead on the substantive objections to the third party complaint. Because we conclude that Hausmann-McNally's indemnification and contribution claims are ripe for adjudication under the framework provided by Rule 14, we shall follow PWR's lead. Having established that Hausmann-McNally's claims are properly before us, we now review them in turn.

## II.     Indemnity

In its third party complaint, Hausmann-McNally argues that, if it is found liable for legal malpractice, then it is entitled to indemnity from PWR. *See* Third Party Compl. ¶ 12(a). This argument fails as a matter of law. Any liability that Hausmann-McNally has for legal malpractice against Plaintiff Mills is not the type of "solely derivative or constructive" liability giving rise to a common law right of indemnity in Indiana.

Indiana law adheres to the general rule that, "in the absence of an express contractual or statutory right to indemnity, a party may bring an action for indemnification only if he is without fault." *Mullen v. Codgell,* 643 N.E.2d 390, 400 (Ind. Ct. App. 1994) (citing *E.Z. Gas, Inc. v. Hydrocarbon Transp., Inc.*, 471 N.E.2d 316, 319 (Ind. Ct. App. 1984)). If the parties have not expressly contracted for a right of indemnity, such a right may therefore be implied at common law only "in favor of one whose liability to another is solely derivative or constructive and only against one whose wrongful act has caused such liability to be imposed." *Mullen,* 643 N.E.2d at 400 (citing *Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.*, 578 N.E.2d 669, 671 (Ind. 1991)). In *McClish v. Niagara Machine & Tool Works*, 266 F. Supp. 987 (S.D. Ind. 1967), this court explained that relationships where a "derivative or constructive" implied right to indemnity may apply include those of an employer to an employee and a manufacturer of a defective good to the retailer of that good. 266 F. Supp. at 989–990. Subsequent Indiana cases have ratified this interpretation of state law. *See Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.,* 929 N.E.2d 838, 849–850 (Ind. Ct. App. 2010); *Rotec v. Murray Equip., Inc.*, 626 N.E.2d 533, 536 (Ind. Ct. App. 1993).

PWR contends that because its brief co-counsel relationship with Hausmann-McNally fits neither of the exceptions to the presumption against an implied right of indemnity, Hausmann-

McNally's claim necessarily fails. Hausmann-McNally, in turn, deprecates PWR's reliance on a "case decided by this Court in 1967," insisting that *McClish* does not create a *per se* rule strictly limiting indemnity to the employer-employee and manufacturer-retailer contexts. Attacking *McClish* as an outlier—apart from being inaccurate—misses the larger point. Whatever the nature of the exceptions, the general rule is clear: "[A] party may only bring an action for indemnification if he is without fault." *Lockhart v. ExamOne World Wide, Inc.,* 2012 WL 3264737, at *2 (S.D. Ind. Aug. 9, 2012). Hausmann-McNally was Plaintiff's sole counsel when the alleged malpractice occurred and the ITCA notice deadline passed; even if we accept the vague suggestion that PWR's later actions were sufficiently negligent that it should share in liability, it is nonsensical to argue that Hausmann-McNally's responsibility is somehow "derivative" of PWR's or purely constructive.[5] Hausmann-McNally's claim here does not fit within the strictly limited framework provided by Indiana law for an implied right of indemnity.

## III.   Contribution

In the alternative, Hausmann-McNally argues that it is "entitled to contribution from PWR, because [Hausmann-McNally] and PWR were engaged in a joint venture and/or joint representation of a client, and therefore any liability imposed on [Hausmann-McNally] for attorney negligence would be for a common liability." Third Party Compl. ¶ 12(b). This argument fails because Hausmann-McNally has not stated a plausible claim that its alleged malpractice occurred as part of a joint venture with PWR.

---

[5] In its separate motion to disqualify counsel [Docket No. 29], Defendant raises a different argument that might have relevance here. Citing *Gregor v. Szarmach,* 706 N.E.2d 240 (Ind. Ct. App. 1999), and *Baker v. Schafer,* 922 F. Supp. 171 (S.D. Ind. 1996), Defendant contends that the principles of equitable estoppel apply, and that its failure to bring notice of a claim against the state agency within the 180-day was blameless because it had no reason to know that Ms. Nelson was a government employee. According to this argument, Hausmann-McNally's liability might be purely "derivative," because PWR—as the putative "lead counsel"—bore the responsibility for giving ITCA notice only *after* Ms. Nelson's September 2012 deposition. As we explain in our Order on Defendant's Motion to Disqualify Counsel published concurrently with this order, we find this argument unpersuasive: without deciding whether Hausmann-McNally was negligent, we can conclude that any such negligence was complete before PWR was involved in the case.

Hausmann-McNally's argument relies upon the notion that it and PWR were engaged in a "joint venture" with respect to the representation of Plaintiff. Under Indiana law, the parties to a joint venture incur the same obligation with respect to their joint liabilities as that borne by members of a partnership. *See Yeager & Sullivan, Inc. v. Farmers Bank,* 317 N.E.2d 792, 798 (Ind. Ct. App. 1974) ("the finding of a joint venture has the effect of rendering the parties to parties to the venture liable as partners for the legal obligations of the venture"); *see also Beck v. Ind. Surveying Co.*, 429 N.E.2d 264, 268 (Ind. Ct. App. 1981). Indiana's codification of the Uniform Partnership Act provides: "The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business, or for the preservation of its business or property." Ind. Code § 23-4-1-18.

We conclude that the relationship between Hausmann-McNally and PWR did not give rise to a right of contribution, for two reasons. First, as PWR has noted, the right of contribution between partners or joint venturers for one another's business debts and liabilities exists in tension with the general rule that no right of contribution exists between joint tortfeasors. *See Barker v. Cole,* 396 N.E.2d 964, 971 (Ind. Ct. App. 1979). In its third party complaint, Hausmann-McNally seems to argue that PWR was *complicit* in any negligence that occurred— primarily for failing to depose Ms. Nelson until the statute of limitations for a personal injury claim against a state agency had passed. *See* Third Party Compl. ¶¶ 8–10. If Hausmann-McNally claims PWR shares actual responsibility for the negligence at issue in this case, then it has, as PWR contends, "pleaded itself out of court." *See* PWR Br. 7. Even if we give Hausmann-McNally the benefit of the doubt and assume that it was attempting to claim a right of contribution in the alternative to its allegations of joint negligence, there is a second reason for

the claim's legal incoherence. The thrust of Plaintiff's malpractice suit is that Hausmann-McNally negligently allowed the ITCA notice period of 180 days to elapse, thus permanently barring Plaintiff from recovering against the state agency that employed Ms. Nelson. That alleged negligence was complete—and its effects irrevocable—more than six months before PWR was hired as co-counsel; no subsequent acts or omissions of PWR as co-counsel could add to or detract from the prejudice allegedly suffered by Plaintiff as a result of that negligence.[6] Hausmann-McNally's negligence is therefore not properly a "partnership liability," since it occurred and took permanent effect before the two firms had established any sort of relationship with one another. *Cf.* Ind. Code § 23-4-1-18 (applying the right of contribution to "liabilities reasonably incurred by [a partner] in the ordinary and proper conduct of its business"); 17 Ind. Law Encyc. Joint Adventures § 7 (noting that the obligation of joint venturers is only to "pay the legal obligations arising from the common enterprise"). We need not resolve any of the factual allegations that PWR was also negligent to conclude that the right of contribution asserted in Hausmann-McNally's third party complaint is baseless as a matter of law.

## Conclusion

Even when reading the facts in a manner most favorable to Hausmann-McNally, we conclude that its indemnity and contribution claims against PWR fail to find support under Indiana law. PWR's motion to dismiss the third party complaint is accordingly GRANTED.

IT IS SO ORDERED.

Date: ___01/14/2014___

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[6] *See supra* n.4; *see also* Order on Defendant's Motion to Disqualify Counsel, filed concurrently with this order.

Distribution:

John W. Mervilde
MEILS THOMPSON DIETZ & BERISH
jmervilde@meilsattorney.com

Neil Andrew Davis
MEILS THOMPSON DIETZ & BERISH
ndavis@meilsattorney.com

Rick D. Meils
MEILS THOMPSON DIETZ & BERISH
rmeils@meilsattorney.com

James Piatt
PRICE WAICUKAUSKI & RILEY
jpiatt@price-law.com

Joseph N. Williams
PRICE WAICUKAUSKI & RILEY
jwilliams@price-law.com

William N. Riley
PRICE WAICUKAUSKI & RILEY
wriley@price-law.com