UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM MILLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:13-cv-00044-SEB-DKL |
| HAUSMANN-MCNALLY, S.C., | ) |
| | ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION TO DISQUALIFY COUNSEL

This cause is before the Court on Defendant Hausmann-McNally, S.C.'s Motion to Disqualify Counsel [Docket No. 29], filed on July 3, 2013. Defendant seeks disqualification of Plaintiff's counsel, Price, Waicukauski & Riley, LLC, on the grounds that the representation violates Indiana Professional Conduct Rule 1.7 as adopted by the Southern District of Indiana. In the alternative, Defendant seeks disqualification of attorneys William N. Riley and Joseph N. Williams as necessary witnesses pursuant to Indiana Professional Conduct Rule 3.7. For the reasons set forth below, the motion is DENIED.

### Factual and Procedural Background[1]

This motion to disqualify arises out of a legal malpractice action, which in turn arises out of a personal injury claim. Plaintiff William Mills, the personal injury claimant, sued his former counsel, Defendant Hausmann-McNally S.C. ("Hausmann-McNally") for legal malpractice. Hausmann-McNally, in turn, filed a motion to disqualify against Plaintiff's present counsel,

---

[1] The factual details recounted here are identical to those recounted in the companion Order on Third Party Defendant's Motion to Dismiss issued concurrently with this order.

1

Price, Waicukauski & Riley, LLC ("PWR"), alleging that PWR has a conflict of interest placing it in violation of the disciplinary rules of this court and the state of Indiana.

### 1. The Personal Injury Suit

Larry Mills was injured in a traffic accident on October 10, 2008 when his motorcycle was struck by another vehicle at an intersection on State Road 37 in rural Lawrence County, Indiana. Compl. ¶¶ 5–6.[2] The driver of the other vehicle was Hannah Nelson, an employee of the Hoosier Uplands Development Corporation, who at the time of the accident was driving on an errand related to her employment with that agency. *Id.* at ¶¶ 7–8. After the accident, Ms. Nelson was interviewed by police for a crash report; she stated that she was the owner of the vehicle, and she provided her personal insurance information. Def's Br. 4. Shortly thereafter, Mr. Mills retained the law firm of Hausmann-McNally to represent him in claims against "all liable parties" to seek recovery for his injuries; Indiana attorney Rodney A. Tucker held primary responsibility for the representation of Plaintiff's interests within Hausmann-McNally. *Id.* at ¶ 12; *see also* PWR's Resp. 6. Larry Mills died in February 2012, and Plaintiff William Mills now serves as the representative of the decedent's estate. Compl. ¶ 2.

Shortly after agreeing to represent Plaintiff, Hausmann-McNally contacted Farm Bureau, Ms. Nelson's personal automobile insurer. On November 6, 2008, Farm Bureau sent Hausmann-McNally copies of Ms. Nelson's insurance policy and declarations page. In the declarations page, Ms. Nelson stated that her vehicle "is driven to and from work 150 miles or less each week." PWR's Resp. 7. In preliminary negotiations with Hannah Nelson pursuant to the personal injury claim, Hausmann-McNally discovered that the limit of her personal automobile insurance policy was $50,000—significantly less than the amount of damages Plaintiff planned to seek. *Id.*

---

[2] Citations to the Complaint ("Compl.") refer to the malpractice complaint filed by Plaintiff against Hausmann-McNally [Docket No. 1].

Hausmann-McNally did not make any further inquiries about Ms. Nelson's employment status or the possibility of recovering from her employer. Instead, Hausmann-McNally made demand on Farm Bureau for the full $50,000, and Farm Bureau agreed to settle on May 13, 2009 for that amount. Farm Bureau provided Hausmann-McNally with a release, and ordered a $50,000 draft, to be paid to Plaintiff and counsel.[3] *Id.* at 8 (citing Docket No. 38, Ex. A).

Because his damages exceeded the settlement amount, Mr. Mills expressed interest in the possibility of recovering from other entities, such as the manufacturer of his motorcycle helmet and the state agencies responsible for designing the intersection where the accident occurred. To facilitate this expansion of the scope of the case, Mr. Mills retained PWR on October 19, 2009. Compl. ¶¶ 17–18. The parties differ in their recounting of the scope of PWR's representation. According to Hausmann-McNally, PWR took on the role of lead counsel for all of Mr. Mills's potential claims. Def.'s Br. 4 ("PWR served as lead counsel in the litigation"). PWR, in contrast, asserts that it was retained only to pursue the new causes of action, and that it had no role in the original claim against Ms. Nelson. PWR's Resp. 9–11.

The parties also differ in how they explain what happened next. It is undisputed that Hausmann-McNally, at least nominally, remained on as co-counsel after Plaintiff hired PWR. Plaintiff filed a products liability and negligence claim on April 21, 2010 in the Marion County Superior Court in Indianapolis, and that suit remains pending. Compl. ¶ 19. Both Hausmann-McNally and PWR filed appearances in that suit. Def.'s Br. 4–5. Plaintiff also filed a personal injury claim against Ms. Nelson at the same time. Compl. ¶ 19. What is disputed is *why* Plaintiff filed this personal injury suit. In PWR's telling, PWR discovered—in the course of preparing for its products liability suit—that the March 2009 $50,000 settlement check from Ms. Nelson's

---

[3] A dispute arose later over whether Hausmann-McNally had ever received this draft, and thus whether the settlement was finalized.

insurer was not actually in Hausmann-McNally's possession; it also learned around the same time that photographs of the scene crucial to the products liability claim were in Farm Bureau's possession. PWR's Resp. 12–13. PWR explains that it named Ms. Nelson as a Defendant in order to enforce the earlier settlement agreement and to obtain an agreement from Farm Bureau to produce those photographs—in other words, the inclusion of Ms. Nelson was largely incidental to their pursuit of the products liability claim. *Id.*

Hausmann-McNally remembers differently. According to its account, "there was significant confusion about the status of the Hannah Nelson claim well after PWR entered the case, and ample evidence to support the inference that the claim had not yet been settled . . . ." Def.'s Reply at 5. In sum, Hausmann-McNally asserts that PWR, as the new lead counsel for Plaintiff, filed suit against Ms. Nelson not as an afterthought, but so that it could, for the first time, secure payment up to the policy limit from Ms. Nelson's insurer. *Id.* at 4–6.

In either event, Ms. Nelson's counsel quickly reached a settlement agreement with Plaintiff, but the products liability suit proceeded. In the course of discovery on that claim, PWR deposed Hannah Nelson as a witness on September 18, 2012. Compl. ¶ 20. During this deposition, Ms. Nelson revealed that she was acting within the course and scope of her employment with the Hoosier Uplands Development Corporation at the time of the accident. *Id*. Hoosier Uplands is a "Community Action Agency," and is therefore considered a "political subdivision" of the State of Indiana for the purposes of the Indiana Tort Claims Act. *Id.* at ¶ 10 (citing Ind. Code §§ 12-14-23-2; 34-13-3-22(a)(1)). Under Indiana law, a prospective plaintiff intending to sue a political subdivision of the state for damages must provide written notice to the defendant agency outlining the nature of the claim and damages within 180 days of the injury. *See* Ind. Code § 34-13-3-8(a). If a prospective plaintiff fails to provide this notice, he is

4

permanently barred from bringing the claim. *Id.* As of September 18, 2012, when Ms. Nelson was deposed and PWR discovered that the procedural bar applied, the 180-day notice period for any claim by Plaintiff against the state agency had long since run. For the accident occurring in October 2008, notice would have been required by April 2009—some six months before PWR was retained in October 2009. *See* Compl. ¶ 18.

**2. The Malpractice Suit**

After deposing Ms. Nelson, an attorney with PWR contacted Mr. Tucker—Plaintiff's primary counsel with Hausmann-McNally—and informed him that since the car accident had been caused by a state agency employee acting within the scope of employment, the 180-day notice period applied. *Id.* at ¶ 21. According to PWR, Mr. Tucker responded: "Your case just got easier. You have a client to call, and you need to sue us for malpractice." *Id.* at ¶ 22. Shortly after this deposition, Hausmann-McNally withdrew as Plaintiff's co-counsel; on October 16, 2012, the Marion County Superior Court granted Hausmann-McNally's motion to withdraw in the pending personal injury suit before that court. *Id.* at ¶ 23.

Plaintiff subsequently made demand on Hausmann-McNally for its alleged malpractice in allowing the 180-day notice deadline to lapse, and thus denying Plaintiff any prospect of recovery from the Hoosier Uplands Development Corporation for the injury caused by the agency's employee. *Id.* at ¶¶ 24–28. When Hausmann-McNally denied any liability, Plaintiff sued Hausmann-McNally for malpractice, filing its complaint with this Court on January 9, 2013. *See* Docket No. 1. In its answer, filed on March 4, 2013, Hausmann-McNally continued to deny that it had committed malpractice. In the alternative, it also filed a third party complaint against PWR, seeking recovery on indemnity and contribution theories in the event that

Hausmann-McNally is found liable to Plaintiff. Docket No. 9.[4] Finally, Hausmann-McNally filed this motion to disqualify counsel on July 3, 2013. *See* Docket No. 29.

## Legal Analysis

### Standard of Review

The disqualification of an attorney is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Owen v. Wangerin,* 985 F.2d 312, 317 (7th Cir. 1993) (quoting *Schiessle v. Stephens,* 717 F.2d 417, 419–420 (7th Cir. 1983)). Accordingly, motions to disqualify are treated with "extreme caution." *See Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982). Caution is warranted both because disqualification motions "can be misused as techniques of harassment," and because the consequences of disqualification are so grave—"destroy[ing] a relationship by depriving a party of representation of their own choosing." *Id.* When addressing such motions, courts are directed to follow a two-step analysis, considering: (1) whether an ethical violation has occurred, and (2) if so, whether disqualification is the appropriate remedy for the violation. *See Guillen v. City of Chicago,* 956 F. Supp. 1416, 1421 (N.D. Ill. 1997).

The Southern District of Indiana adopts Indiana's version of the Rules of Professional Conduct as the substantive standard governing questions of alleged ethical violations. *See Gen-Cor, LLC v. Buckeye Corrugated, Inc.*, 111 F. Supp. 2d 1049, 1051 (S.D. Ind. 2000). "The Rules of Professional Conduct adopted by this Court are the Rules of Professional Conduct adopted by the Supreme Court of the state of Indiana, as amended from time to time by that state court." S.D. Ind. R. of Disciplinary Enforcement V.

The principal disciplinary guideline at issue here is Rule 1.7, governing concurrent conflicts of interest. In relevant part, the Rule provides that "a lawyer shall not represent a client

---

[4] Hausmann-McNally's third party complaint is the subject of a separate order.

if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: . . . there is a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer." Ind. Rules of Prof'l Conduct 1.7. Even if a conflict exists, a lawyer may still represent a client if the following conditions are met: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to the client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation; and (4) the client gives informed consent, confirmed in writing. Ind. Rules of Prof'l Conduct 1.7(b). A moving party bears the burden of proving that an actual conflict of interest in violation of Rule 1.7 exists, rather than merely a potential one. *See Philips Medical Systems Int'l B.V. v. Bruetman*, 8 F.3d 600, 606 (7th Cir. 1993).

    Defendant also invokes Indiana Professional Conduct Rule 3.7, which provides that:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
    (1) the testimony relates to an uncontested issue;
    (2) the testimony relates to the nature and value of legal services rendered in the case; or
    (3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Indiana Rules of Prof'l Conduct 3.7. As with Rule 1.7, the moving party bears the burden of concretely establishing the necessity of disqualification. *See Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). Because of their susceptibility to abuse as tactical devices, courts treat motions under Rule 3.7 with skepticism. *See Harter v. Univ. of Indianapolis,* 5 F. Supp. 2d 657, 665 (S.D. Ind. 1998) (noting that courts "must be concerned about the possibility that the motion to disqualify is an abusive tactic").

7

**Discussion**

The primary thrust of Defendant's motion is that PWR must be disqualified from representing Plaintiff in any capacity or aspect of this litigation because of the material limitation placed on its representation by its conflict of interest under Rule 1.7. In the alternative, Defendant contends that, even if PWR as a whole is not disqualified, then PWR attorneys William N. Riley and Joseph N. Williams must be disqualified because they are essential witnesses under Rule 3.7. We address these arguments in turn.

**I.    PWR's Conflict of Interest under Rule 1.7**

In their briefing on this motion, the parties devote the majority of their discussion to the substantive focus of Defendant's disqualification argument: whether or not PWR's representation of Plaintiff is "materially limited" by its own potential liability for malpractice in failing to provide notice for a claim against a state agency as required by the ITCA. We conclude, however, that the motion can be resolved without deciding the underlying question of PWR's—or Hausmann-McNally's—malpractice liability. Defendant's motion fails because Defendant lacks proper standing to bring a motion to disqualify under these circumstances.

**A. Standing requirements for a motion to disqualify counsel**

The general rule accepted by most federal jurisdictions is that only a current or former client has standing to seek disqualification of an attorney from a matter pending before a court. *See In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976) (collecting cases); *see also Tizes v. Curico,* 1997 WL 116797, at *2 (N.D. Ill. Mar. 12, 1997). *See generally* Eric C. Surette, Annotation, *Standing of Person, Other than Former Client, to Seek Disqualification of Attorney in Civil Action*, 72 A.L.R.6th 562 (2012). The majority position draws its strength from the logic of the Rule itself, which is designed to protect the interests of

those harmed by conflicting representations rather than serve as a weapon in the arsenal of a party opponent; thus, "the proper party to raise the conflict of interest issue, in a motion to disqualify counsel, is the party that [Rule 1.7] was intended to protect—the client or the former client." *See Tizes,* 1997 WL 116797, at *2 (citing *Thomas & Betts Corp. v. Panduit Corp.*, 1995 WL 319635, at *1 (N.D. Ill. May 25, 1995)).

The Seventh Circuit has not staked out a clear position on the issue of standing to bring disqualification motions. In its decision in *Matter of Sandahl,* 980 F.2d 1118 (7th Cir. 1992), the court noted in passing that a party had no standing to enforce its opponent's right to the loyalty of counsel. 980 F.2d at 1121. While this dictum seems to lend support to the majority position, district courts within the circuit have declined to enforce an absolute rule against standing by third-party attorneys or party opponents who are not former clients. Several decisions from the Northern District of Illinois, using language derived from the official comment to Rule 1.7, have concluded that "[w]here the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question." *See Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D. 293, 306 (N.D. Ill. 1997) (citing *Tizes,* 1997 WL 116797, at *2); *see also Thomas & Betts*, 1995 WL 319635, at *1. This Court has endorsed a similar rule. In *Emmis Operating Co. v. CBS Radio, Inc.*, 480 F. Supp. 2d 1111 (S.D. Ind. 2007), we held that an opposing party was entitled to seek disqualification where the conflict of interest was sufficiently grave to undermine the court's inherent interest in preserving "the fair or efficient administration of justice." 480 F. Supp. at 1116; *see also Leathermon v. Grandview Memorial Gardens, Inc.*, 2010 WL 1381893, at *1 n.1 (S.D. Ind. Mar. 31, 2010).

**B. Defendant's standing to bring this motion**

We conclude that PWR's potential conflict of interest in this case is not sufficiently grave as to call into question the fair or efficient administration of justice—and thus, that Defendant may not properly seek PWR's disqualification.

Even if the general rule against party opponents other than former clients bringing disqualification motions is not absolute, courts in this circuit have made clear that the interests protected by Rule 1.7 are the crux of the standing issue. In *Thomas & Betts Corp. v. Panduit Corp.*, 1995 WL 319635 (N.D. Ill. May 25, 1995), the court considered the defendants' argument that "Plaintiffs' counsel have rendered their continued representation of Plaintiffs improper by placing themselves in the untenable position of being material witnesses from whom Defendants must obtain deposition and trial testimony." 1995 WL 319635, at *1. Where the alleged harm arising from the "material limitation" conflict impacted only the plaintiffs, the court concluded that "[d]efendants' feigned concern for [plaintiff]'s welfare is unpersuasive," and it ruled that the defendants therefore lacked standing to bring such a motion. *Id.* at *2. The contrast with *Emmis Operating Co. v. CBS Radio, Inc.*, 480 F. Supp. 2d 1111 (S.D. Ind. 2007), where this court applied the same principles and found that a party *did* have standing to seek disqualification of opposing counsel, is illustrative. In *Emmis,* the plaintiff's current attorney had previously represented a high-level employee of the defendant corporation—the employee whose hiring away by the defendant was the subject of the underlying suit between the two companies. 480 F. Supp. 2d at 1113–1115. Thus, although the defendant was not formally a former client of the plaintiff's counsel, the fundamental judicial interest in fairness was implicated. *Id.* at 1117.

Here, Defendant maintains that Plaintiff may be prejudiced by PWR's conflict of interest—a conflict that, according to Defendant, springs from PWR's potential liability for

10

malpractice in failing to provide timely notice for a suit against a state agency under the Indiana Tort Claims Act. Citing the Indiana Court of Appeals case of *Gregor v. Szarmach,* 706 N.E.2d 240 (Ind. Ct. App. 1999), and this court's decision in *Baker v. Schafer,* 922 F. Supp. 171 (S.D. Ind. 1996), Defendant asserts that serving timely notice on the state after the Nelson deposition might have allowed an equitable override of the ITCA's 180-day bar. Def.'s Br. 9–12. If so, then PWR's failure to give such notice—thus allowing the statute of limitations for any personal injury claim to lapse—could render it liable for malpractice. *Id.* The possibility that Plaintiff's best interest lay in naming PWR—in addition to or instead of Hausmann-McNally—as a malpractice defendant, so Defendant argues, makes PWR's representation in the malpractice suit materially limited by the firm's self-interest.[5] *Id.* at 14. After laying out its protective theory of Plaintiff's self-interest, Defendant adds the following (admirably candid) caveat: "H-M does not wish to portray itself as altruistic in its filing of this motion." *Id.* Defendant continues, saying that the inclusion of any possibly culpable parties in the lawsuit would be to Defendant's own benefit as well, increasing the possibility that "this matter can be resolved fairly before trial." *Id.*

Unlike in *Emmis,* there is no sense here in which the fairness of the adversarial process is compromised by PWR's continued representation of Plaintiff. Although we will not now delve into the question of Defendant's liability for malpractice, we are unpersuaded by Defendant's arguments concerning an equitable extension of the ITCA 180-day notice period. In its recent decision in *Schoettmer v. Wright,* 992 N.E.2d 702 (Ind. 2013), the Indiana Supreme Court held that to avoid the strict 180-day notice deadline, a claimant must satisfy the elements of equitable estoppel, which are as follows: (1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based

---

[5] Defendant also points to an additional layer of conflict created by PWR's status as a third-party defendant for malpractice. However, we have dismissed Defendant's third party complaint in a separate order.

11

thereon of such a character to change his position prejudicially. 992 N.E.2d at 709. In other words, to shift the onus of potential malpractice liability onto PWR, Defendant would have to show that its failure to provide ITCA-compliant notice was done in subjective ignorance of the need for such notice, and in reliance upon a misrepresentation by a state employee.[6] As PWR has demonstrated, Defendant was neither subjectively ignorant nor acting in reliance upon any misleading communications from the state. We elaborate below:

      First, Defendant did nothing to investigate Ms. Nelson's work status, despite the fact that the accident took place at mid-day on a work day and Ms. Nelson's declaration that she used the vehicle to drive to and from work. *See* PWR Resp. 7 (citing Tucker Dep. 132:24–133:2). A claim by Defendant that it "lacked knowledge or the *means of knowledge* of the matter in question" here would be unpersuasive, given that even the most rudimentary inquiry into the matter would likely have disclosed Ms. Nelson's status as a state agency employee.[7] *Cf. City of Crown Point v. Lake Cnty.*, 510 N.E.2d 684, 687 (Ind. 1987) (holding that "[e]stoppel cannot be applied if the facts are equally known by or accessible to both parties"); *see also City of Evansville v. Follis,* 315 N.E.2d 724, 728 (Ind. Ct. App. 1974).[8] Second, and even more concretely, neither the state or any of its agents made any "representations" or intentional omissions upon which Defendant can reasonably claim to have relied. *Id.* at 20–21; *cf. City of Crown Point,* 510 N.E.2d at 687 (declining to apply equitable estoppel where "neither party has acted in reliance on the misrepresentation or concealment of a material fact by the other"). Defendant never spoke to Ms.

---

[6] Defendant's malpractice liability is an all-or-nothing proposition with respect to PWR. If the 180-day bar did apply, then there is no possibility that PWR—which was not involved in the suit until some six months after the deadline expired—shares any responsibility for allowing it to lapse.

[7] The notion that Ms. Nelson was not obfuscating her employment status is strengthened by the fact that she readily disclosed it the first time she was asked – at the September 2012 deposition.

[8] Defendant replies that the registration and insurance information provided by Ms. Nelson in the Crash Report gave no indication that she was a state employee. *See* Def.'s Reply 11. While this may be true, providing truthful information as to herown insurance coverage falls far short of an affirmative misrepresentation or an intentional concealment of her employment status.

Nelson after the accident, and even the standard police Crash Report produced using her statements does not contain any representation regarding her employment status. PWR Resp. 21 (citing *Schoettmer,* 992 N.E.2d at 709). As PWR points out, equitable estoppel is not properly triggered by mere confusion; the party to be estopped must be responsible for the misapprehension. *See* PWR Resp. 21 (citing *City of Crown Point,* 510 N.E.2d at 687).

We need not definitively determine whether PWR has any potential conflict of interest in order to conclude that Defendant's asserted interest in preserving PWR as a potential defendant is far-fetched, and is not sufficient to impel disqualification to secure "the fair or efficient administration of justice." *See Emmis,* 480 F. Supp. at 1116. Defendant is left, then, in a position of attempting to justify a motion to disqualify primarily on the basis of *Plaintiff's* interests. Seventh Circuit case law makes clear that under these circumstances, an adversary party lies outside the protective scope of the conflict rules, and thus lacks standing to bring a disqualification motion. *See In re Sandahl,* 980 F.2d at 1121; *Blanchard*, 175 F.R.D. at 306.

Moreover, it appears that Plaintiff has given consent to the representation after being informed of the potential conflict. According to the affidavit of William N. Riley, a PWR partner, PWR sent Plaintiff a letter outlining the allegations raised by Hausmann-McNally's third-party complaint against PWR seeking contribution or indemnification for the malpractice; after reviewing the letter, Plaintiff provided his consent to the continued representation in writing. Riley Decl. ¶¶ 15–16. Although the signed consent is not in the record, Defendant has not disputed the veracity of PWR's account. *See* PWR Resp. 15, n.16.[9] Any argument for PWR's disqualification is weakened further where, as here, the party that Rule 1.7 is designed to protect—PWR's client—has decided that the benefits of PWR's representation outweigh

---

[9] In order to exempt PWR from a conflict of interest under Rule 1.7(b), of course, a more thorough examination of the signed consent—in addition to analysis of the other factors enumerated in the Rule—would be required. Here, however, the relevance of Plaintiff's consent is limited to the antecedent question of standing.

13

whatever detriment PWR's self-interest may present. *See, e.g., Rudzinski v. Metro. Life Ins. Co.*, 2007 WL 3171338, at *5 (N.D. Ill. Oct. 25, 2007). Regardless of whether PWR is ideally situated in the abstract to serve as Plaintiff's counsel in this matter, Defendant has not shown us that the ends of justice compel an intervention to disqualify PWR and frustrate Plaintiff's right to a representative of his own choosing.

## II.     Rule 3.7 Motion to Disqualify Attorneys Riley and Williams

Absent the disqualification of PWR as a whole, Defendant alternatively seeks the disqualification of PWR attorneys William N. Riley and Joseph N. Williams as "necessary witnesses" under Rule 3.7. In a brief paragraph devoid of any citations to the record or controlling legal authority, Defendant argues that Riley and Williams, as the two attorneys who appeared on behalf of Plaintiff for PWR in the underlying suit, "unquestionably will be witnesses in this matter . . . . Williams and Riley are essential witnesses to this case because they were the attorneys who made the day-to-day decisions in the underlying suit." Def.'s Br. 15.

As we have already noted, the moving party bears a significant burden when it seeks the disqualification of opposing attorneys under Rule 3.7. "Where one party argues that an opponent's attorney is a necessary witness and moves to disqualify that attorney, . . . courts view the opponent's asserted need to call the attorney more skeptically and must be concerned about the possibility that the motion to disqualify is an abusive tactic to hurt the opponent's ability to pursue his case." *Harter v. Univ. of Indianapolis,* 5 F. Supp. 2d 657, 663 (S.D. Ind. 1998). The moving party must show both that the testimony it seeks to elicit from the attorneys in question is "more than marginally relevant" to the issues being litigated, and that "the testimony will result in evidence that cannot be obtained elsewhere." *Utilimaster Corp. v. Ind. Dept. of State Revenue,* 967 N.E.2d 92, 96 (Ind. T.C. 2012) (citing *Knowledge A–Z, Inc. v. Sentry Ins.*, 857

14

N.E.2d 411, 418 (Ind. Ct. App. 2006)). Thus, if the evidence that would be offered by having an opposing attorney testify can be elicited through any other means, then the attorney's testimony is not "necessary" and he or she should not be disqualified. *See Harter,* 5 F. Supp. 2d at 665.

Defendant's perfunctory argument falls far short of establishing the necessity of Riley and Williams's testimony. Given that we have dismissed Defendant's third party complaint against PWR for indemnification and contribution, it is even less clear why the testimony of any PWR attorneys would be necessary to resolve the question of Defendant's liability for malpractice.[10] The primary purpose of Rule 3.7 is to avoid confusion at trial created by the dual role of an attorney as advocate and witness. *See Utilimaster,* 967 N.E.2d at 97. Defendant may seek disqualification of PWR attorneys from participation at trial if and when it is able to show that the specific testimony of any such attorneys is both relevant and necessary to the presentation of its case. *See generally Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell,* 239 F. Supp. 2d 1170, 1174 (D. Colo. 2003) (noting that the disqualification of certain attorneys as witnesses at trial does not preclude their participation in pretrial activities). For now, Defendant has given us no reason to invoke the disciplinary rules to disqualify the PWR attorneys, jointly or severally.

## Conclusion

Defendant Hausmann-McNally has failed to meet the elevated burden borne by a party seeking disqualification of its adversary's attorneys. The motion to disqualify counsel is accordingly DENIED.

---

[10] Defendant argues that the testimony of Williams and Riley may still be necessary because PWR has been designated as a responsible non-party in Defendant's affirmative defenses. Def.'s Reply 15. As we have noted previously, the question of Defendant's negligence is antecedent to any question of PWR's liability for missing the ITCA deadline—if Defendant was guilty of malpractice, then the malpractice was complete well before PWR became involved in the case. Therefore, disqualification of Williams and Riley on these grounds is, at the very least, premature.

IT IS SO ORDERED.

Date: _01/14/2014_____		_____

                SARAH EVANS BARKER, JUDGE
                United States District Court
                Southern District of Indiana

Distribution:

John W. Mervilde
MEILS THOMPSON DIETZ & BERISH
jmervilde@meilsattorney.com

Neil Andrew Davis
MEILS THOMPSON DIETZ & BERISH
ndavis@meilsattorney.com

Rick D. Meils
MEILS THOMPSON DIETZ & BERISH
rmeils@meilsattorney.com

James Piatt
PRICE WAICUKAUSKI & RILEY
jpiatt@price-law.com

Joseph N. Williams
PRICE WAICUKAUSKI & RILEY
jwilliams@price-law.com

William N. Riley
PRICE WAICUKAUSKI & RILEY
wriley@price-law.com