UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


WILLIAM  MILLS,                                    )
                                                   )
                          Plaintiff,               )
                                                   )
              vs.                                  )         1:13-cv-00044-SEB-DKL
                                                   )
HAUSMANN-MCNALLY, S.C.,                             )
                                                   )
                          Defendant.               )

### ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This cause is before the Court on Plaintiff William Mills's Motion for Partial Summary

Judgment [Docket No. 86], filed on March 26, 2014. For the reasons set forth below, the motion

is GRANTED in part and DENIED in part.

### Factual and Procedural Background

This motion for summary judgment arises out of a legal malpractice action, which in turn

arises out of a personal injury claim. Plaintiff William Mills, the personal injury claimant, sued

his former counsel, Defendant Hausmann-McNally S.C. ("Hausmann-McNally") for legal

malpractice. Hausmann-McNally, in turn, asserted as an affirmative defense to the malpractice

claim that a non-party—namely Plaintiff's present counsel, Price Waicukauski & Riley, LLC

("PWR")—was responsible in whole or in part for any legal malpractice that Hausmann-

McNally may have committed. *See* Docket No. 9 at 6. Having rejected Defendant's

counterclaims, we now address for the first time the merits of Plaintiff's claim for legal

malpractice.

**1. Facts**

Larry Mills was injured in a traffic accident on October 10, 2008 when his motorcycle was struck by another vehicle at an intersection on State Road 37 in rural Lawrence County, Indiana. Compl. ¶¶ 5–6.[1] The driver of the other vehicle was Hannah Nelson,[2] an employee of the Hoosier Uplands Development Corporation, who at the time of the accident was driving on an errand related to her employment with that agency. *Id.* at ¶¶ 7–8. As Nelson was turning left onto State Road 37 on a green light, her car collided with Mills's motorcycle as he attempted to proceed straight through the intersection. The police crash report prepared at the scene stated that Nelson failed to yield to oncoming traffic in making her left turn, Docket No. 46-14 at 2; Nelson testified that she did not see Mills's motorcycle before the collision. Docket No. 46-3 (Nelson Dep.) at 17, 18, 28. She also stated that her attempt to turn was complicated by a piece of debris in the intersection, and she recalled that her view of oncoming traffic may have been limited by a hill. *Id.* Mills was severely hurt as a result of the accident, suffering a significant head injury as well as other injuries.

After the accident, Nelson was interviewed by police; she told them that she was the owner of the vehicle, and she provided her personal insurance information. The police crash report stated that Nelson used the vehicle for "PERSONAL (FARM, COMPANY)" purposes. Docket No. 31, Ex. A at 3. Shortly thereafter, Mills retained the law firm of Hausmann-McNally to represent him in claims against "all liable parties" to seek recovery for his injuries; attorneys Rodney A. Tucker and Christopher Moeller handled the representation of Plaintiff's interests within the Hausmann-McNally firm. Tucker Dep. 132–133; Moeller Decl. ¶ 5.[3] Larry Mills died

---

[1] Citations to the Complaint ("Compl.") refer to the malpractice complaint filed by Plaintiff against Hausmann-McNally [Docket No. 1].

[2] Hannah Nelson was formerly known, at the time of the accident, as Hannah Brooking; some documents in the record refer to her by that name. We call her "Nelson" throughout to minimize confusion.

[3] Tucker was the more senior attorney, and he characterized Moeller as the primary day-to-day "file handler" for the case. Tucker Dep. 132–133. Moeller, however, has asserted that Tucker held principal responsibility as the firm's head attorney for personal injury matters in the Indianapolis area. Moeller Decl. ¶ 5.

in February 2012, and Plaintiff William Mills now serves as the representative of the decedent's estate. Compl. ¶ 2.

Shortly after agreeing to represent Plaintiff, Hausmann-McNally contacted Farm Bureau, Nelson's personal automobile insurer. On November 6, 2008, Farm Bureau sent Hausmann-McNally copies of Ms. Nelson's insurance policy and a declarations page. The declarations page stated that Nelson's vehicle "is driven to and from work 150 miles or less each week." Pl.'s Ex. 13 at 5. In preliminary negotiations with Hannah Nelson pursuant to the personal injury claim, Hausmann-McNally discovered that the limit of her personal automobile insurance policy was $50,000—significantly less than the amount of damages Plaintiff planned to seek. Hausmann-McNally did not make any further inquiries about Nelson's employment status or the possibility of recovering from her employer. Instead, Hausmann-McNally made demand on Farm Bureau for the full $50,000, and Farm Bureau agreed to settle on May 13, 2009 for that amount. Farm Bureau provided Hausmann-McNally with a release, and ordered a $50,000 draft to be paid to Plaintiff and counsel.[4] Docket No. 45 at 7 (citing Pl.'s Ex. 12 at 1).

Because his damages substantially exceeded the settlement amount, Mills expressed interest in the possibility of recovering from other entities, such as the manufacturer of his motorcycle helmet and the state agencies responsible for designing the intersection where the accident occurred. To facilitate this expansion of the scope of the case, Mills retained PWR on October 19, 2009. Docket No. 63 at 3, ¶ 12; Docket No. 45 at 8–9. The parties differ in their recountings of the scope of PWR's representation. According to Hausmann-McNally, PWR took on the role of lead counsel for all of Mills's potential claims. Docket No. 30 at 4 ("PWR served as lead counsel in the litigation"). PWR, in contrast, asserts that it was retained only to pursue the

---

[4] A dispute arose later over whether Hausmann-McNally had ever received this draft, and thus whether the settlement was finalized.

new causes of action, and that it had no role in the original personal injury claim against Nelson. Docket No. 45 at 8–10.[5]

Nelson's counsel quickly reached a settlement agreement with Plaintiff, but the products liability suit proceeded. In the course of discovery on that claim, PWR, acting on Plaintiff's behalf, deposed Hannah Nelson as a witness on September 18, 2012. Docket No. 45 at 13–14. During this deposition, Nelson revealed that she was acting within the course and scope of her employment with the Hoosier Uplands Development Corporation ("Hoosier Uplands") at the time of the accident. Docket No. 31, Ex. F. Hoosier Uplands is a "Community Action Agency," and is therefore considered a "political subdivision" of the State of Indiana for purposes of the Indiana Tort Claims Act. *Id.* (citing Ind. Code § 34-13-3-8). Under Indiana law, a prospective plaintiff intending to sue a political subdivision of the state for damages must provide written notice to the defendant agency outlining the nature of the claim and damages within 180 days of the injury. *See* Ind. Code § 34-13-3-8(a). If a prospective plaintiff fails to provide this notice, he is permanently barred from bringing the claim. *Id.* As of September 18, 2012, when Ms. Nelson was deposed and PWR discovered that the procedural bar applied, the 180-day notice period for any claim by Plaintiff against the state agency had long since run. For the accident occurring in October 2008, notice would have been required by April 2009—some six months before PWR was retained in October 2009. *See* Compl. ¶ 18.

**2. Procedural History**

After deposing Nelson, an attorney with PWR contacted Tucker—Plaintiff's primary counsel with Hausmann-McNally—and informed him that since the car accident had been

---

[5] The parties have devoted a great deal of attention to their dispute regarding the scope of PWR's representation. Now that we have granted summary judgment against Defendant's affirmative defense, however, the scope of PWR's duties is irrelevant to our consideration of Plaintiff's malpractice claim against Hausmann-McNally. We accordingly do not engage in a detailed discussion of this factual dispute.

caused by a state agency employee acting within the scope of employment, the 180-day notice period applied. *Id.* at ¶ 21. According to PWR, Tucker responded: "Your case just got easier. You have a client to call, and you need to sue us for malpractice." *Id.* at ¶ 22. Shortly after this deposition, Hausmann-McNally withdrew as Plaintiff's co-counsel; on October 16, 2012, the Marion Superior Court granted Hausmann-McNally's motion to withdraw in the pending personal injury suit pending before that court. Docket No. 38 at 14.

Plaintiff subsequently made demand on Hausmann-McNally for its alleged malpractice in allowing the 180-day notice deadline to lapse, and thus denying Plaintiff any prospect of recovery from the Hoosier Uplands Development Corporation for the injury caused by the agency's employee. *Id.* at ¶¶ 24–28. When Hausmann-McNally denied any liability, Plaintiff sued Hausmann-McNally for malpractice, filing its complaint with this Court on January 9, 2013. *See* Docket No. 1. In its answer, filed on March 4, 2013, Hausmann-McNally continued to deny that it had committed malpractice, and it asserted three affirmative defenses. Docket No. 9 Defendant's first affirmative defense was that PWR was a non-party wholly or partly responsible for any malpractice Hausmann-McNally may have committed. *Id.* at 6, ¶ 1. In the alternative, it also filed a third party complaint against PWR, seeking recovery on indemnity and contribution theories in the event that Hausmann-McNally is found liable to Plaintiff. Docket No. 9. Hausmann-McNally also filed a motion to disqualify counsel on July 3, 2013. *See* Docket No. 29.

We previously dismissed Defendant's third-party complaint against PWR for indemnification and contribution in an order dated January 14, 2014. Docket No. 69. We also dismissed Defendant's motion to disqualify counsel on the same day. Docket No. 70. Plaintiff moved for partial summary judgment against Defendant's first affirmative defense [Docket No.

44] as of September 19, 2013, and Defendant filed its cross motion for partial summary judgment on the same issue [Docket No. 62] on December 9, 2013. The Court granted Defendant's motion for summary judgment—and denied Plaintiff's cross motion for summary judgment—on September 24, 2014. Docket No. 100.

## Legal Analysis

Summary judgment is appropriate on a claim if the moving party can show that there is no genuine dispute as to any material fact, leaving them entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323 (1986). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the Amere existence of some alleged factual dispute between the parties,@ *id.*, 477 U.S. at 247, nor the existence of Asome metaphysical doubt as to the material facts,@ *Matsushita*, 475 U.S. at 586, will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in Plaintiff's favor, if genuine doubts remain and a reasonable fact-finder could find for Plaintiff, summary judgment is

inappropriate. *See Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992). But if it is clear that Plaintiff will be unable to satisfy the legal requirements necessary to establish his case, summary judgment is not only appropriate, but mandated. *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element Anecessarily renders all other facts immaterial.@ *Celotex*, 477 U.S. at 323.

### Discussion

Plaintiff claims that Defendant Hausmann-McNally engaged in legal malpractice by failing to discover that Hannah Nelson was a state government agency employee acting in the scope of her employment at the time of her collision with Larry Mills—and consequently failing to provide Hoosier Uplands notice of a tort claim within the 180-day deadline prescribed by the Indiana Tort Claims Act. Because suit against Hoosier Uplands became time-barred by Hausmann-McNally's inaction, Plaintiff alleges, Mills permanently lost a significant avenue of recovery for his injuries, which exceeded the $50,000 limit of Nelson's personal liability insurance policy. Compl. ¶¶ 29–34.

Plaintiff seeks partial summary judgment on all the elements of his legal malpractice claim except for damages, whose determination will be left to the finder of fact if Plaintiff prevails. Under Indiana law, a plaintiff must establish the following to prevail on a claim for legal malpractice: (1) the existence of a duty arising from an attorney-client relationship; (2) the attorney's failure to meet the standard of care imposed upon attorneys by exercising "ordinary skill and knowledge"; and (3) damages proximately caused by this breach of the standard of care. *Clary v. Lite Machs. Corp.*, 850 N.E.2d 423, 430 (Ind. Ct. App. 2006); *Oxley v. Lenn,* 819 N.E.2d 851, 856–857 (Ind. Ct. App. 2004). Summary judgment is "rarely appropriate" in legal malpractice cases because "whether a particular act or omission is a breach of duty is generally a

question of fact." *Rhodes v. Wright,* 805 N.E.2d 382, 387 (Ind. 2004); *Oxley,* 819 N.E.2d at 856.

Judgment may be rendered as a matter of law, however, when "the facts are undisputed and only

a single inference can be drawn from the facts." *Oxley,* 819 N.E.2d at 856 (citing *Stephenson v.*

*Ledbetter,* 596 N.E.2d 1369, 1372 (Ind. 1992)).

The existence of an attorney's duty towards a client is a question of law to be resolved by

the Court. *See Keybank Nat'l Ass'n v. Shipley,* 846 N.E.2d 290, 295 (Ind. Ct. App. 2006). Here,

the parties do not dispute that Hausmann-McNally and Plaintiff had an attorney-client

relationship at the time of the alleged malpractice, giving rise to a duty of care. *See* Def.'s

Answer at ¶¶ 9, 10; Def.'s Resp. 19. There are therefore two issues we must resolve: whether

Hausmann-McNally breached the applicable standard of care, and whether that breach was the

proximate cause of harm to Plaintiff.

**I.      Breach of the standard of care**

Attorneys generally owe their clients a duty "to exercise ordinary skill and knowledge" in

their representation. *Flatow v. Ingalls,* 932 N.E.2d 726, 729 (Ind. Ct. App. 2010). The precise

contours of that duty in practice—the "standard of care"—are dependent upon factual context.

Here, Plaintiff has submitted the expert report of Irwin B. Levin, an Indiana-licensed attorney

and partner with the firm Cohen & Malad, LLP. Docket No. 87-2 (Levin Decl.) at 1. As a

practitioner with significant experience in litigating legal malpractice actions, Levin opines that,

in the exercise of ordinary skill and knowledge, Hausmann-McNally's standard of care in

agreeing to represent Mills in the aftermath of the accident included the following steps:

> (1) Fully investigate the facts surrounding the collision;
>
> (2) Investigate specifically all facts and law which could afford the client
> alternate sources of recovery, especially given the magnitude of the injuries
> and the small amount of insurance under the tortfeasor's personal policy;

> (3) Specifically determine whether the tortfeasor was acting within the course and scope of her employment at the time of the collision;

> (4) Determine if the Indiana Tort Claims Act was implicated in the case; and

> (5) Give notice as required under the ITCA.

Docket No. 87-2 (Levin Report) at 5–6. On February 2, 2009, Hausmann-McNally sent a letter to Nelson's personal liability carrier, demanding her policy limits of $50,000 as the "full and final settlement of this matter," while recognizing that "the nature and extent of our client's injuries far exceed your client's policy limits." Docket No. 38-3. Based upon his review of the record, Levin concludes that:

> Neither before nor after this demand letter did any lawyer at the Hausmann firm . . . conduct any discovery, or even make any inquiry, to determine whether Brooking [a/k/a Nelson] was acting within the course and scope of her employment at the time of the collision. This failure to conduct discovery or inquiry is below the standard of care for attorneys practicing tort law in the State of Indiana.

Levin Report at 6.

Defendant's response on this issue is two-fold. First, it assails the admissibility of the Levin expert report. Second, Defendant reprises its argument that Hausmann-McNally's conduct was not negligent because Hoosier Uplands would have been estopped from asserting the ITCA notice deadline as a bar to suit.

**A. Admissibility of the Levin report**

Defendant asserts that the Levin report offers "opinions as to what constitutes the duty owed in this case," impermissibly encroaching on the Court's province in resolving questions of law, as prescribed by Indiana Rule of Evidence 704(B). Def.'s Resp. 16. In support of this argument, Defendant relies primarily on *Merrill v. Knauf Fiber Glass GmbH,* 771 N.E.2d 1258 (Ind. Ct. App. 2002), a decision of the Indiana Court of Appeals upholding the trial court's

exclusion of expert testimony regarding the existence of a duty in negligence. There, the plaintiff in a premises liability case offered the report of an expert who opined that the defendant's uncovered skylight was unreasonably dangerous, in contravention of its duty towards the plaintiff, a contractor working on the premises who fell through the skylight and sustained injuries. Noting that the existence of a duty of care is a legal issue, the court held that the expert testimony ran afoul of Indiana Rule of Evidence 704(B), which "proscribes expert opinion testimony concerning legal conclusions." *Id.* at 1263 (citing Ind. R. Evid. 704(B)).

Defendant's argument, and citation to *Merrill*, are inapposite for two reasons. First, Defendant errs in looking to state, rather than federal, evidentiary rules as the governing standard. As the Seventh Circuit has recognized, in accordance with long-established *Erie* principles, "the Federal Rules of Evidence govern the admissibility of expert testimony in federal diversity cases." *Stutzman v. CRST, Inc.*, 997 F.2d 291, 295 (7th Cir. 1993) (citing *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052 (4th Cir. 1986); *Dawsey v. Olin Corp.*, 782 F.2d 1254 (5th Cir. 1986)); *Peoples State Bank v. Stifel, Nicolaus & Co., Inc.*, 2013 WL 1024917, at *2 (S.D. Ind. Mar. 14, 2013). Federal Rule of Evidence 704, the analogue to the rule cited by Defendant, does not mirror the state rule's blanket prohibition on expert testimony touching on legal questions. *See* Fed. R. Evid. 704(a). While it is a "general rule" under the Federal Rules of Evidence that an "expert may not offer legal opinions," "[t]here are some exceptions to this general rule, including some issues of legal malpractice . . . ." *Jimenez v. City of Chicago,* 732 F.2d 710, 721 n.7 (7th Cir. 2013) (citing *Am. Int'l Adjustment Co. v. Galvin,* 86 F.3d 1455, 1461 (7th Cir. 1996)).

Even more to the point, the Indiana court's opinion in *Merrill* is also inapposite because it dealt primarily with a different question than that presented here. In this case, the parties dispute not whether Defendant owed Plaintiff a duty of care, but the primarily factual question of

whether Defendant's conduct fell short of the standard of reasonable care that applied to the circumstances at hand. *See In re Estate of Lee,* 954 N.E.2d 1042, 1047–1048 (Ind. Ct. App. 2011) ("[A]lthough experts may not testify as to conclusions of law, such as the existence of a duty, expert witnesses are permitted to testify to the standard of practice within a given field."). *Cf. Indianapolis Podiatry, P.C. v. Efroymson,* 720 N.E.2d 376, 384 (Ind. Ct. App. 1999) (disapproving of expert testimony that "merely recite[s] legal conclusions [and] the opinions of the affiants on matters unrelated to the standard of care"). Quite apart from its admissibility as a matter of evidentiary law, Indiana's substantive law views expert testimony as a positive necessity in establishing the breach element of a legal malpractice claim. "Under Indiana law, expert testimony is normally required to demonstrate the standard of care by which the defendant attorney's conduct is measured." *Am. Int'l Adjustment Co. v. Galvin,* 86 F.3d 1455, 1461 (7th Cir. 1996) (quoting *Hacker v. Holland,* 570 N.E.2d 951, 953 (Ind. Ct. App. 1991)). *See also In re Estate of Lee,* 954 N.E.2d at 1047–1048. "In fact, the requirement of expert testimony in proving most types of malpractice claims has been adopted so widely that it may be legal malpractice to litigate a legal malpractice claim without expert testimony." *Am. Int'l Adjustment,* 86 F.3d at 1461.

Plaintiff seeks to introduce Levin's testimony for the purpose of establishing the standard of care to which a reasonably diligent attorney would adhere in a factual scenario like that presented to Hausmann-McNally when the firm undertook to represent Mills. Expert testimony on that subject is both admissible and necessary to Plaintiff's case-in-chief. Levin's further opinion that, based on his review of the record, Hausmann-McNally breached that standard of care, is also admissible—even though it is not necessary to Plaintiff's case under Indiana law. *See Am. Int'l Adjustment,* 86 F.3d at 1461 ("Finally, under Fed. R. Evid. 704(a), an expert may

testify about the ultimate issue to be decided by the trier of fact."). Defendant's objections to this evidence are without merit.

## B. Defendant's Estoppel Argument

Although Defendant challenges the admissibility of the Levin testimony, it does not seek to forestall summary judgment primarily on the grounds that Hausmann-McNally conducted an adequate investigation into Nelson's employment status and therefore was not negligent. In fact, Defendant asserts that "whether [Hausmann-McNally] conducted such an investigation is immaterial." Def.'s Resp. 15. Defendant instead seeks to shift the focus, arguing—as it has at nearly every stage of this litigation—that, because Hoosier Uplands would have been estopped from invoking the 180-day ITCA notice deadline as a bar to suit, PWR shares responsibility for any negligence that occurred. *Id.* In Defendant's words:

> Even if, at some point, someone (PWR, in H-M's estimation) should have determined whether Brooking [Nelson] was acting in the scope of her employment when she was involved in the accident, it does not follow that H-M was required to make such a determination within the first 180 days. . . . [W]hen an attorney actually and reasonably lacks knowledge of the existence of a governmental entity, such as in this case, there is no such 180 day requirement to file a Tort Claim Notice.

*Id.* at 24–25.

This argument is, by now, a familiar one—and one we have consistently rejected. *See* Docket No. 69 at 13; Docket No. 70 at 12. In our Order granting summary judgment on Defendant's affirmative defense, we definitively closed the book:

> We conclude that Defendant has failed to demonstrate that equitable estoppel would have barred an ITCA defense to a suit filed after April 2009. It has demonstrated neither that it lacked "knowledge or the means of knowledge" that

Hannah Nelson was the employee of a state agency, nor that it relied to its detriment on representations made by Hoosier Uplands or its agent Nelson.[6]

Docket No. 100 at 11. Defendant advances no new argument in favor of its estoppel theory, which we therefore set aside; if Defendant is to avoid summary judgment on the question of its negligence, it will not do so by shifting the focus away from the initial 180-day period in which Hausmann-McNally—and only Hausmann-McNally—represented Plaintiff.

## C. Available inference from the undisputed facts

Plaintiff has thus presented evidence in the form of expert testimony regarding the standard of care applicable to Hausmann-McNally. Apart from its objections to the Levin report's admissibility, Defendant also takes issue with the report's specificity: "[T]he duty here is to exercise ordinary skill and knowledge in performing professional functions . . . any attempt to formulate more narrow or specific sub-duties are [sic] not for the plaintiffs, the Defendants, or any experts." Def.'s Resp. 19. Defendant further notes that there is no Indiana authority directly supporting the existence of a duty to "fully investigate facts surrounding a collision," "specifically determine whether the tortfeasor was acting within the course and scope of her employment at the time of the collision," or "determine if the [ITCA] was implicated in the case." *Id.*

Defendant has confused the general concept of "duty" with the more specific, context-sensitive concept of a "standard of care." *See Storey v. Leonas,* 904 N.E.2d 229, 238 (Ind. Ct.

---

[6] The language the Court quoted in its September 2014 order comes from *Schoettmer v. Wright,* 992 N.E.2d 702 (Ind. 2013), a recent Indiana Supreme Court case that set forth the standard governing the applicability of equitable estoppel to a tort defendant's invocation of the ITCA notice provision. In its Response, Defendant contends that since *Schoettmer* is a 2013 case, Hausmann-McNally's conduct should be evaluated in light of the different estoppel standard that supposedly prevailed prior to *Schoettmer*'s issuance. As we explained in our March 2014 Order, however, *Schoettmer* represented a clarification of long-recognized equitable principles; it did not repudiate an earlier, more permissive body of law. *See* Docket No. 100 at 9–11.

App. 2009). As we have already stated, the standard of care expected of an attorney is the concrete application of his or her general duty to the facts at hand. *See, e.g.*, *Dennerline v. Atterholt,* 886 N.E.2d 582, 589 (Ind. Ct. App. 2008). The standard of care is therefore established not by appeal to the general notion of an attorney's duty to exercise "ordinary skill and knowledge" or to precedent, but by expert testimony. *Id.* The only exception to the requirement of expert testimony, in fact, arises when the contours of reasonable conduct are common knowledge to lay jurors—a situation not present here. *Storey,* 904 N.E.2d at 238.[7] *See also Ball v. Kotter,* 723 F.3d 813, 821–822 (7th Cir. 2013). Seen in the proper light, it is *Defendant's* failure to provide expert testimony of its own—not Plaintiff's reliance on such testimony—that constitutes a glaring strategic error. *See Am. Int'l Adjustment,* 86 F.3d at 1461 ("[T]he requirement of expert testimony in proving most types of malpractice claims has been adopted so widely that it may be legal malpractice to litigate a legal malpractice claim without expert testimony.").

Defendant has pointed to no evidence—expert or otherwise—that establishes a standard of care different than the one proposed by Levin, or that supports an inference that Hausmann-McNally was not in breach of the applicable standard. The testimony of Hausmann-McNally partner Rodney Tucker, if anything, buttresses the conclusions of Levin's report. In his deposition, he agreed with the assertion of Plaintiff's counsel that "if somebody has a closed

---

[7] The "common knowledge" exception is most commonly applied on behalf of malpractice claimants who contend that the misconduct at issue was so egregious that a reasonable juror could apprehend its negligent quality without any expert guidance whatsoever. "The only exception to the rule is when the question is within the common knowledge of the community as a whole or when an attorney's negligence is so grossly apparent that a layperson would have no difficulty in appraising it." *Storey,* 904 N.E.2d at 238 (citing *Hacker v. Holland,* 570 N.E.2d 951, 953 n.2 (Ind. Ct. App. 1991)). Using such an exception as a shield rather than a sword is inherently problematic; there are few attorney courses of conduct that are inherently and obviously *correct* (or at least non-negligent) to a layperson without any further context. There is no question here that the question of whether failing to investigate the employment status of a tortfeasor in light of the ITCA violates the standard of care is one ill-suited to lay speculation.

head injury, and you find out there's a $50,000 limit, . . . it's the duty of the lawyer to investigate other sources of recovery." Docket No. 46-4 (Tucker Dep.) at 72. He further agreed that in terms of when to conduct such investigation, "the sooner the better." *Id.* at 134.

Levin's expert testimony is admissible and reasonable. The burden accordingly shifts to Defendant to show that a genuine issue of material fact still exists as to the standard of care—a burden that Defendant has failed to carry. *Cf. Thomsen v. Musall,* 708 N.E.2d 911, 912 (Ind. Ct. App. 1999) (recognizing the general rule that "expert testimony . . . is required in a legal malpractice action to establish the standard of care," but affirming a trial court's decision to deny summary judgment where the moving party's "expert" testimony was the potentially unreliable affidavit of the defendant attorney herself). In the absence of any controverting evidence, we must therefore consider as undisputed the standard of care described in Levin's testimony for attorneys representing car accident victims. Stated in most general terms, then, the exercise of ordinary skill and knowledge in this context requires attorneys to conduct a full investigation into the facts surrounding the client's collision. Levin Report 5–6. This investigation includes an effort to identify all potential defendants and sources of recovery, and to determine whether the driver responsible for the accident was acting within the course and scope of his or her employment. *Id.* The standard of care further requires that attorneys do whatever is necessary— such as providing the notice prescribed by the ITCA—to preserve viable avenues of recovery. *Id.* at 6.

The material facts with respect to Hausmann-McNally's alleged breach of this standard of care are also undisputed. Upon his review of the record, Levin concluded that no one at Hausmann-McNally involved with the handling of Plaintiff's case ever made any inquiry into Nelson's employment status, or whether she was acting within the course and scope of her

employment at the time of the collision. *Id.* at 7. Defendant has pointed to no evidence that contradicts that conclusion. Hausmann-McNally partner Tucker, in fact, conceded that the firm failed to inquire into Nelson's employment status—or speak to her at all—within the 180-day period in question. Tucker Dep. 72, 132–133.[8] While Defendant disputes Plaintiff's rhetorical characterization that it did "nothing" to investigate the matter after being retained by Mills, it does not, and cannot, dispute that it failed to meet the standard enunciated by Levin.

There is no genuine dispute of material fact here as to either the applicable standard of care or Defendant's breach of it. The relevant facts of Hausmann-McNally's conduct are undisputed, and Defendant's failure to introduce any evidence as to the standard of care means that only one inference is available: that Hausmann-McNally was negligent. As the Seventh Circuit has noted, the burden on the non-movant at the summary judgment stage is "not onerous"; she "need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). However, "if the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question, then the court *must* enter summary judgment against [it]." *Id.* (emphasis original). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–587 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–324 (1986). Plaintiff has produced evidence consistent only with the inference that Defendant breached the applicable standard of care, and Defendant has mustered no response, other than an ineffectual challenge to the admissibility of the evidence and a reprise of its unsuccessful legal

---

[8] In his deposition, Tucker stated that Hausmann-McNally did not speak to Ms. Nelson or conduct any investigation of her employment status; he also stated that he personally had not made any contact with her insurance carrier on the question, and asserted that he lacked knowledge whether others at the firm had made such contact. Tucker Dep. at 72–73. Later, he stated that he had not personally conducted any investigation into whether Nelson was working at the time of the crash, nor did he instruct any other Hausmann-McNally attorneys to do so. *Id.* at 132–133.

arguments regarding estoppel. In the face of this evidence, we must conclude that summary judgment is warranted with respect to the issue of breach.

## II. Causation

In order to establish proximate cause for a negligence claim, a plaintiff must show that the harm which he suffered would not have occurred but for the defendant's conduct. *Hedrick v. Tabbert,* 722 N.E.2d 1269, 1272–1273 (Ind. Ct. App. 2000) (citing *Johnson v. Owens,* 639 N.E.2d 1016, 1023 (Ind. Ct. App. 1994)). In a legal malpractice action, a plaintiff former client must "show that the outcome of the underlying litigation would have been more favorable but for the attorney's negligence." *Id.*; *Picadilly, Inc. v. Raikos,* 582 N.E.2d 338, 344 (Ind. 1991), *abrogated on different grounds by Liggett v. Young,* 877 N.E.2d 178 (Ind. 2007). This requires a "trial within the trial"—in this case, a determination whether Plaintiff would have been entitled to additional recovery from Hoosier Uplands had Hausmann-McNally not allowed the ITCA notice deadline to lapse. *See Flatow v. Ingalls,* 932 N.E.2d 726, 729 (Ind. Ct. App. 2010). We must therefore ask whether a hypothetical suit, brought by Plaintiff against Hoosier Uplands for Nelson's negligence in causing the accident, would have been successful.

Here, Defendant does not dispute that *respondeat superior* would render Hoosier Uplands liable for torts that its employee Nelson committed within the course and scope of her employment. *See, e.g., Lake Cnty. Juvenile Court v. Swanson,* 671 N.E.2d 429, 437–439 (Ind. Ct. App. 1996). *See also Barnett v. Clark,* 889 N.E.2d 281, 283 (Ind. 2008). Nelson testified that, at the time the accident occurred, she was "at work"—driving to Bedford to deliver a blood sample she had just taken from a patient in Oolitic. Docket No. 46-3 (Nelson Dep.) at 12–13. Any reasonable factfinder would infer from this undisputed testimony that Nelson was engaged

in "furthering her employer's business" when the collision occurred and that Hoosier Uplands may share in her liability for damages. *See Barnett,* 889 N.E.2d at 283.

We must decide then whether Nelson was negligent in colliding with Mills's motorcycle.[9] Her negligence, like that of Hausmann-McNally in breaching its standard of care, is a question of fact, and thus ordinarily not suited to disposition on summary judgment. *Godby v. Whitehead,* 837 N.E.2d 146, 151 (Ind. Ct. App. 2005) (citing *See Peters v. Forster,* 804 N.E.2d 736, 743 (Ind. 2004)). We can grant summary judgment as to this element only if the undisputed facts reasonably compel but one conclusion.

In support of his motion, Plaintiff points to two pieces of evidence: the police crash report and Hannah Nelson's deposition testimony. At the time the accident occurred, Nelson was traveling west on Patton Valley Road and attempting to turn left onto southbound State Road 37; Mills was driving east on Patton Valley Road attempting to proceed through the intersection on a green light.[10] According to the crash report prepared by the police officer who investigated at the scene, Nelson "failed to yield the right of way to [Mills]." Docket No. 46-14 at 1–2. The report lists no other cause of the accident, but it states that no citations were issued at the scene pending a review by the county prosecutor's office. *Id.* In her testimony, Nelson never admitted her own fault, but conceded that she did not "think [Mills] did anything wrong either." Nelson Dep. 71–

---

[9] Defendant also raises theories of contributory negligence and negligent intersection design as an intervening cause. Because we conclude that Plaintiff is not entitled to summary judgment on the antecedent question of Nelson's negligence, we need not reach those possible defenses at this stage.

[10] The crash report's narrative of the actual collision is as follows:

> Vehicle #1 [Nelson] was turning from westbound Patton Hill Rd/Main Street (Oolitic) onto southbound SR 37. Vehicle #2 [Mills], a motorcycle, was eastbound on Patton Hill Road, going straight across SR 37. Both vehicles had the green light. Vehicle #1 turned left and collided with Vehicle #2. Driver #2 was ejected from the motorcycle, rolled over Vehicle #1, and landed face down in the middle of the SR 37 crossover.

Docket No. 46-14 at 2.

72. Plaintiff also notes that in its Response to this motion Defendant conceded the veracity of the following "material fact not in dispute" as asserted by Plaintiff: that "Ms. Nelson failed to yield the right-of-way to Mr. Mills, and this failure caused a collision." *See* Def.'s Resp. 3–4; Pl.'s Br. 15 at ¶ 4.[11]

In response, Defendant again devotes considerable space to its now-futile estoppel argument, asserting that PWR's subsequent failure to give notice under the ITCA constituted an intervening cause of Mills's loss. *See* Def.'s Resp. 27–31. However, Defendant does also point to elements of Nelson's testimony that might allow a fact-finder to assign her less fault for the accident than the cut-and-dried language of the police crash report would indicate at first glance.[12] Nelson's testimony regarding the circumstances of the crash is as follows:

> **[Nelson]**: I believe the light was red and when the light turned green, I went to turn left and in the median or middle between the highways, it was – there was a metal grate from like off the back of a truck trailer. It was kind of towards the Oolitic side of the intersection. However, it was still in the median. And I went around it on the right-hand side and went to turn left.
> **Q:** So when you say it was toward the Oolitic side but still in the median, it sounds like you're saying it's closer to the side of the road that you were on?
> **[Nelson]**: Correct.
> **Q:** But it was not obstructing the traffic on [State Road] 37?
> **[Nelson]:** No.
> **Q:** But it was such that to turn left you had to slightly go to the right to go around it?
> **[Nelson]:** You had to go around it, correct.
> **Q:** Did you ever look at that truck grate – the trailer grate after the collision?
> **[Nelson]:** No.

---

[11] Plaintiff insists that this concession constitutes a "judicial admission" and thus removes the question of Nelson's negligence in causing the accident from contention. *See* Pl.'s Reply 13–14 (citing *Eli Lilly & Co. v. Valeant Pharms. Int'l,* 2011 WL 573761, at *3 (S.D. Ind. Feb. 15, 2011)). As the case cited by Plaintiff makes clear, however, "[t]he scope of a judicial admission by counsel is restricted to unequivocal statements as to matters of fact which otherwise would not require evidentiary proof—it does not extend to counsel's statements of their conception of the legal theory of a case, i.e., legal opinion or conclusion." *Eli Lilly & Co. v. Valeant Pharms.*, 2011 WL 573761, at *3. Even if we treat Defendant's concession in its Response as conclusive as to whether Nelson failed to yield to oncoming traffic, it does not necessarily follow that Nelson was negligent.

[12] Defendant also argues that genuine issues of material fact exist regarding the contributory negligence of Mills or the negligent design of the intersection. Because we conclude that summary judgment is not warranted on the antecedent question of Nelson's negligence, we do not reach these possible affirmative defenses.

**Q:** And so after you went around this grate, what happened next?
**[Nelson]:** That is when I went to turn left and I saw the motorcycle.
**Q:** And where exactly was the motorcycle when you saw it?
**[Nelson]:** I thought I was in the – like starting to already turn left. From what I remembered, I was already almost out of the median to go into the other lane to turn left.
**Q:** Did you think that you were into the southbound lanes of 37?
**[Nelson]:** I thought I was at the edge of it, like almost into it but not quite.

. . .

**Q:** Okay. Was this – so you indicated as you are starting to enter the southbound lanes of 37, you see the motorcycle. Is that the first time that you saw the motorcycle?
**[Nelson]:** Yes.
**Q:** Had you looked before you turned left towards Patton Hill Road?
**[Nelson]:** Yes.
**Q:** And what was your purpose for looking towards Patton Hill Road to turn left?
**[Nelson]:** To make sure there was no oncoming traffic.
**Q:** Did you see any oncoming traffic, either the motorcycle or any other vehicle?
[Nelson]: No.

Docket No. 96-3 (Nelson Dep.) at 15–18.

Plaintiff contends that the undisputed facts establish that Nelson failed to yield to oncoming traffic in violation of Indiana traffic law[13]—and was thus negligent *per se. See Jenkins v. City of Fort Wayne,* 210 N.E.2d 390, 392–393 (Ind. Ct. App. 1965) ("Generally, the violation of a duty prescribed by statute or ordinance is negligence *per se* or as a matter of law."). But Indiana law provides for exceptions to negligence *per se* principles where compliance with the statute in question was impossible or noncompliance was excusable. *See Freeman v. King,* 231

---

[13] Specifically, Plaintiff asserts that Nelson violated Indiana Code Section 9-21-8-30, which provides:

> A person who drives a vehicle within an intersection intending to turn to the left shall yield the right-of-way to a vehicle approaching from the opposite direction that is within the intersection or so close to the intersection as to constitute an immediate hazard. After yielding and giving a signal as required by this chapter, the person who drives the vehicle may make the left turn, and the persons who drive other vehicles approaching the intersection from the opposite direction shall yield the right-of-way to the vehicle making the left turn.

Ind. Code § 9-21-8-30.

N.E.2d 161, 164 (Ind. Ct. App. 1967). Given Nelson's testimony regarding the existence of a possible obstruction in the intersection—and the paucity of available evidence on the question in general—we are not persuaded that only one reasonable inference from the available evidence is possible.

Plaintiff bears the burden of showing that Hausmann-McNally's malpractice denied him a recovery from Hoosier Uplands greater than the $50,000 he received from Nelson's personal insurer. *See Hedrick,* 722 N.E.2d at 1273. Because the evidence before us at this stage does not allow us to conclude definitively that Nelson was negligent, Plaintiff is unable meet that burden at this stage of the litigation.

## Conclusion

As we have observed, the material facts with respect to Hausmann-McNally's conduct during the period when it served as Mills's sole representative in his personal injury suit are undisputed. The firm failed to investigate Hannah Nelson's employment status or to inquire into the possibility of recovering from her employer—which turned out to be a state agency. Because the only evidence before us regarding the standard of care indicates that this conduct was negligent, we GRANT Plaintiff's motion for partial summary judgment with respect to the elements of duty and breach of the standard of care. However, the motion is DENIED with respect to causation. The issues of causation and damages therefore remain pending a resolution at trial.

IT IS SO ORDERED.

Date: ____1/21/2015_____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

2

Distribution:

Neil Andrew Davis
LEBLANC NETTLES DAVIS
neil@indianalawgroup.com

John W. Mervilde
MEILS THOMPSON DIETZ & BERISH
jmervilde@meilsattorney.com

Rick D. Meils
MEILS THOMPSON DIETZ & BERISH
rmeils@meilsattorney.com

James  Piatt
PRICE WAICUKAUSKI & RILEY
jpiatt@price-law.com

Joseph N. Williams
PRICE WAICUKAUSKI & RILEY
jwilliams@price-law.com

William N. Riley
PRICE WAICUKAUSKI & RILEY
wriley@price-law.com